## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PEARSON EDUCATION, INC.,
JOHN WILEY & SONS, INC.,
CENGAGE LEARNING INC. AND
THE MCGRAW-HILL COMPANIES, INC.,

        Plaintiffs,

v.

VINOD KUMAR, VIRENDER YADAV
AND SUKHWINDER SINGH D/B/A
MODERN BOOKS D/B/A EXPRESS
BOOKS AND JOHN DOES NOS. 1-5,
        Defendants.

1: 07- CV-9399 (CSH)

## <u>MEMORANDUM OPINION AND ORDER</u>

<u>HAIGHT, Senior District Judge</u>:

The four plaintiff corporations ("Plaintiffs") hold copyrights for a variety of educational

textbooks. They move for summary judgment against Defendants Vinod Kumar ("Kumar") and Dart

Air, Inc. ("Dart") on claims of copyright infringement of 379 copyrights under §§ 106(3), 501, and

602(a) of the Copyright Act.[1] Specifically, Plaintiffs contend that Kumar and Dart purchased foreign

editions of their books, manufactured outside of the United States, and resold them to purchasers in

---

[1] 17 U.S.C. §§ 106(3), 501, and 602(a). Plaintiffs' Amended Complaint alleges that
defendants infringed copyrights in addition to the 379 that are the subject of this motion.
Plaintiffs have offered to withdraw the claims regarding the additional copyrights in the event
that the Court grants the relief requested in the present motion. Plaintiffs' Memorandum (filed
7/31/2008), p. 9 n.1.

Plaintiffs have also set forth two claims that are not included in their summary judgment
motion, alleging trademark infringement under 15 U.S.C. § 1114(a) and common law unfair
competition under state law. Plaintiffs' Amended Complaint, Claims 2 & 3, p. 9-11. Plaintiffs
have not stated an intention to withdraw those claims pending the outcome of their current
motion.

the United States through various Internet websites.[2]  They currently seek summary judgment on their claim of copyright infringement, minimum statutory damages under 17 U.S.C. § 503(c) (i.e., $750 per copyright for each of the 379 copyrights at issue), and a permanent injunction barring Kumar and Dart from any future infringement.

Defendants Kumar and Dart (hereinafter "Defendants") oppose Plaintiffs' summary judgment motion.   They argue that the sale of Plaintiffs' copyrighted works is lawful under the "first sale" doctrine, codified at 17 U.S.C. § 109(a).  Moreover, Kumar asserts that he cannot be liable for copyright infringement because he had no knowledge that the sale of the foreign editions was unlawful.

Defendant Kumar moves to dismiss the complaint against him for lack of personal jurisdiction.  Defendants jointly cross move to dismiss the complaint for failure to state a claim and/or summary judgment.

Addressing each motion in turn, this Court finds that the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that Plaintiffs are entitled to judgment on their copyright infringement claim as a matter of law.  As a result, Plaintiffs  are entitled to the requested minimum statutory damages and a permanent injunction against defendants Kumar and Dart from the future manufacture, distribution and/or sale of Plaintiffs' foreign editions.  Defendants' cross motions are denied as set forth below.

---

[2]Plaintiffs named three individual defendants (Vinod Kumar, Virender Yadav, and Sukhwinder Singh) and one corporate defendant, Dart Air, Inc., in their Amended Complaint. In their summary judgment motion, however, they have only named Kumar and Dart.

I.   FACTS

The record establishes the following facts.  Plaintiffs, publishers of numerous copyrighted educational textbooks, create various versions of their books customized for sale in specific geographic markets.  Amended Complaint ¶¶ 17-18.  These versions include those authorized for sale in the United States ("United States Editions") and those intended for sale outside of the United States ("Foreign Editions").  *Id.*  United States Editions are of the highest quality, generally printed with hard-cover bindings with glossy protective coatings, and may include such extra features as sewn ribbon bookmarks.  *Id.* ¶ 17.  They are often accompanied by academic supplements such as CD-ROMs, computer passwords to academic websites, and study guides.  *Id.*

Foreign Editions are identical in content to United States Editions but inferior in printing quality. [3]  *Id.* ¶ 18; Essig Dec. ¶ 5; Murphy Dec. ¶ 4 ; Sampson Dec. ¶ 6; Beacher Dec. ¶ 5; Plaintiffs' Rule 56.1 Statement ¶ 5.  They are printed on thinner paper with different bindings, covers, and jacket designs.  Amended Complaint ¶ 18.   They possess fewer internal ink colors, if any, and contain lower quality photographs and graphics.  *Id.*  They are generally not accompanied by academic supplements.  *Id.*  Each such edition is generally marked by a legend indicating its lower cost with "Low Price Edition" and/or authorized for sale only in a particular country or geographic region.  *Id.*  Foreign Editions are uniformly manufactured outside of the United States. *Id.*

Defendant Kumar is a natural person, a citizen of India,  residing in New Delhi, India. Affidavit of Vinod Kumar ¶ 3.  He is in the courier business and thus able to export merchandise

---

[3]In accordance with the level of their quality and lack of supplements, they are generally priced lower than the United States Editions.   Thus, each title is marked to indicate "Low Price Edition."

from India to the United States at a reduced cost.  Dunnegan Dec., Ex. F., 32: 2-4, 79: 18-25.

Defendant Dart is a corporation organized pursuant to the laws of the State of New York with its principal place of business in New York City.  Defendants' First Memorandum of Law (filed 1/8/2009),  p. 3, Statement of Facts ¶5; Amended Complaint, p. 3, ¶11.   Kumar initially hired, and later acquired, Dart to distribute Plaintiffs' Foreign Editions in the United States.[4]  Dunnegan Dec., Ex. F,   32:1 to 33:6; *see also* Kumar Letter (dated 8/7/2008), p. 2, para. 1.

Defendants purchased Foreign Editions of Plaintiffs' books in India and resold them in the United States through Internet websites,[5]  using a variety of usernames.[6]  Kumar Letter (dated 8/7/2008), para. 1 ("I admit I sold these textbooks through abebooks.com and textbookx.com); *see also* Dunnegan Dec., Ex. F, 63:10-15, 72:11-18 and Ex. I (Banks Dec.) ¶ 3; Amended Complaint, p. 4, ¶12; Defendant's First Memorandum of Law (filed 1/8/2009),  p. 4, ¶12.

Plaintiffs are the owners of the United States copyrights with respect to all 379 of the works of authorship at issue in their summary judgment motion.[7]  Amended Complaint ¶¶ 19, 26-30 and Schedules A and D; Plaintiffs' Rule 56.1 Statement ¶¶ 1-4;  Essig. Dec.¶ 3 and Ex. A; Murphy. Dec.

---

[4]No evidence in the record suggests that Kumar or Dart sold any books other than Foreign Editions.

[5]Such websites include AbeBooks.com, Alibris.com, A1Books.com, A Book Company, LLC, Bookbyte.com, ValoreBooks.com, and Textbookx.com.  Amended Complaint, p. 7, ¶ 24; *see also* Plaintiff's Rule 56.1 Statement ¶ 6.

[6]These usernames include, but are not limited to, Modern Books, Express Books, Unique Books, Jhon Book Store, ExpressBooks05, and QualityInstruments400.  Amended Complaint, p.7, ¶ 24.

[7]Pearson Education, Inc. holds 144 of the copyrights (Essig Dec., p. 2, ¶ 3 & Exh. A); John Wiley & Sons, Inc. holds 71 (Murphy Dec., p. 2, ¶ 3 & Exh. B); Cengage Learning Inc. holds 54 (Sampson Dec., p. 2, ¶ 3 & Exh. C); and The McGraw-Hill Companies, Inc. holds 110 (Beacher Dec., p. 2, ¶ 3 & Exh. D).

¶ 3 and  Ex. B; Sampson Dec. ¶ 3 and Ex. C; Beacher Dec. ¶ 3 and Ex. D.   Each of these 379

copyrights has been  registered  with the United States Copyright Office.   Amended Complaint

¶¶ 19, 26-30;  Plaintiffs' Rule 56.1 Statement ¶¶ 1-4. Defendants sold a Foreign Edition of each of

Plaintiffs' 379 copyrights at issue.   Plaintiffs' Rule 56.1 Statement ¶¶ 7-10; Dunnegan Dec., Ex.

M - P.


II.     JURISDICTION AND VENUE

This Court has "federal question" subject matter jurisdiction over Plaintiffs' copyright and

trade infringement actions pursuant to 28 U.S.C. §§ 1331[8] and 1338.[9]  These claims patently arise

under federal statute, the Copyright Act, 17 U.S.C. § 101 *et seq.*  and the Lanham Act, 15 U.S.C.

§ 1051 *et seq.*

This Court also has jurisdiction over Plaintiffs' claim for "common law unfair competition

under state law" pursuant to 28 U.S.C.  § 1338(b).  Section 1338(b)  grants district courts "original

jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial

---

[8]28 U.S.C. § 1331 confers "federal question" jurisdiction upon the district courts as
follows:

"The district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."

[9]28 U.S.C. § 1338 confers original jurisdiction on the district courts in copyright and
trademark cases as follows:

(a) The district courts shall have original jurisdiction of any civil action arising under any
Act of Congress relating to patents, plant variety protection, **copyrights and
trademarks**. Such jurisdiction shall be exclusive of the courts of the states in patent,
plant variety protection and copyright cases.

(Emphasis added).

and related claim under the copyright, patent, plant variety protection or trademark laws."  Plaintiffs'

unfair competition claim is joined with their substantial and related claims of coypright and

trademark infringement.[10]

Venue is proper in this District pursuant to 28 U.S.C. § 1391.  Section 1391(b) provides that

a civil action "not founded solely on diversity of citizenship" may only be brought in three specified

judicial districts:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the
> claim occurred, or a substantial part of property that is the subject of the action is situated,
> or (3) a judicial district in which any defendant may be found, if there is no district in which
> the action may otherwise be brought.

28 U.S.C. § 1391(b).  Subsection (b)(1) does not apply, since all Defendants do not reside in the

same state.  However, subsection (b)(2) is satisfied, since the copyrighted works at issue were

distributed in this district and that distribution comprises "a substantial part of the events" giving rise

to the Plaintiffs' three claims.[11]  Alternatively, subsection (b)(3) applies, since it is undisputed that

defendant Dart was "found" in this district.  Dart's address for service was 155 West 29th Street,

Suite 9B, New York, New York, and Dart's principal place of business was indisputably New York

City.  Defendants' First Memorandum of Law (filed 1/8/2009), p. 3, ¶ 5.

---

[10]Alternatively, this Court has supplemental jurisdiction over Plaintiffs' unfair
competition claims pursuant to 28 U.S.C. § 1367, which states that "in any civil action of which
the district courts have original jurisdiction, the district courts shall have supplemental
jurisdiction over all other claims that are so related to claims in the action within such original
jurisdiction that they form part of the same case or controversy under Article III of the United
States Constitution."

[11]Defendant Yadav testified at his deposition about occasions when Dart received
delivery of "the books" in Manhattan. Dunnegan Dec., Ex. F, 33: 23 to 35: 12; 63: 19 to 65: 19.

III.    STANDARD FOR SUMMARY JUDGMENT

A.    General Standard

Plaintiffs have brought the present motion for summary judgment on their copyright infringement claim pursuant to Federal Rule of Civil Procedure 56(c). The standard to be applied on a motion for summary judgment in this Circuit is well settled. Under Rule 56(c), summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) ; *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *McAnaney v. Astoria Financial Corp.*, No. 04-CV-1101, 2009 WL 3150430, at *6 (E.D.N.Y. Sept. 29, 2009) . *See also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.").

When ruling on a motion for summary judgment, the court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Pearson Educ., Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, at *2 (S.D.N.Y. May 13, 2008) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Summary judgment is proper only when, after drawing all reasonable inferences in favor of the non-movant, no reasonable trier of fact could find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). *See also Anderson*, 477 U.S. at 248 (summary judgment is unwarranted if "the evidence

7

is such that a reasonable jury could return a verdict for the nonmoving party"); *Amnesty America. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir.2004) (court's function "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments") (citations omitted); *Ford*, 316 F.3d at 354 (2d Cir.2003) (summary judgment is "improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party").

The party seeking summary judgment bears the burden of showing that there are no *genuine* issues of *material* fact. "A fact is 'material' when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citation and internal quotation marks omitted). In the case at bar, the Copyright Act supplies the governing law. "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation and internal quotation marks omitted). If the moving party makes that showing, then "[u]nless the nonmoving party offers some hard evidence that its version of the events is not wholly fanciful, summary judgment is granted to the moving party." *Id.* (citation and internal quotation marks omitted). The nonmoving party must show that a trial is necessary because a genuine issue exists as to a material fact. There must be more than a "scintilla of evidence" in the non-movant's favor. *Anderson*, 477 U.S. at 252. "Conclusory allegations," "bald assertions," and "metaphysical doubt" will not suffice. *See, e.g., BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) (it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or

8

facts").[12]  Rather, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87); *see also R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (nonmoving party must set forth "concrete particulars" showing that a trial is needed).  If the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  *Id.* at 247-48 (emphases in original).

B.   Cross Motions for Summary Judgment

When both parties move for summary judgment, the district court is obligated to evaluate each party's motion on its merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Schwabenbauer v. Board of Education of Olean*, 667 F.2d 305, 313-14 (2d Cir. 1981) Neither side is barred from asserting that there are issues of fact sufficient to preclude the entry summary judgment against it. *Schwabenbauer,* 667 F.2d at 313.  Moreover, when faced with cross motions for summary judgment, the district court is not required to grant judgment as a matter of law

---

[12]*See also Heublein, Inc. v. United States.* , 996 F.2d 1455, 1461 (2d Cir. 1983) ("Genuine issues of fact are not created by conclusory allegations."); *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ("defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden" to overcome properly supported summary judgment motion)*; see also Matsushita Elec.*, 475 U.S. at 586 (to avoid summary judgment, a party "must do more than simply show that there is some metaphysical doubt as to the material facts").

for one side or the other. *Heublein*, 996 F.2d at 1461; *Schwabenbauer*, 667 F.2d at 313.

IV.   DISCUSSION

A.   Plaintiff's Motion For Summary Judgment

1.   Copyright Infringement

In their summary judgment motion, Plaintiffs claim that Defendants violated the copyrights

for 379 of Plaintiffs' Foreign Editions by unlawfully distributing those works in violation of 17

U.S.C. §§ 106, 501 and 602(a).[13]  To establish a copyright infringement claim, there must be proof

that (1) plaintiff held a valid copyright in the work allegedly infringed and (2) the defendant

infringed the plaintiff's copyright by violating one of the exclusive rights enumerated in 17 U.S.C.

§ 106.  *Island Software & Comp. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005);

*Pearson Educ., Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, at *4 (S.D.N.Y. May 13,

2008).  One such exclusive right is the right to "distribute copies . . . of the copyrighted work to the

public by sale."[14]  17 U.S.C. § 106(3).

---

[13]Section 501, entitled, "Infringement of copyright" reads in pertinent part:

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by
sections 106 through 122 or of the author as provided in section 106(a), or who imports
copies or phonorecords into the United States in violation of section 602, is an infringer
of the copyright or right of the author, as the case may be.

17 U.S.C. § 501(a).

[14]Section 106, entitled, "Exclusive rights in copyrighted works," thus provides:

"Subject to sections 107 through 122, [T]he owner of copyright under this title has the
**exclusive rights** to do and to authorize any of the following:
(3) **to distribute copies** or phonorecords **of the copyrighted work to the public by sale**
or other transfer of ownership, or by rental, lease, or lending . . . ."

2.     First Sale Doctrine

A copyright holder's exclusive right to sell copies is limited by the "first sale doctrine," codified at 17 U.S.C. § 109(a).  That doctrine allows the purchaser of a physical copy of a copyrighted work to sell that copy to another without infringing the copyright owner's exclusive distribution rights.  Section 109(a) provides:

> Notwithstanding the provisions of section 106(3), the owner of a particular copy . . . lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy . . . .

17 U.S.C. § 109(a).  For the doctrine's inception, *see also Bobbs-Merrill Co. v. Straus*, 210 U.S. 339, 350  (1908) ("[t]he purchaser of a book, once sold by authority of the owner of the copyright, may sell it again, although he could not publish a new edition of it").

Once the copyright owner sells or transfers a particular copy, he divests himself of the exclusive right in that copy; such that the right to sell passes to the buyer or transferee.  *See, e.g.*, *Walt Disney Prods. v. Basmajian*, 600 F. Supp. 439, 442 (S.D.N.Y. 1984).  As the United States Supreme Court explained in *Quality King Distributors, Inc. v. L'anza Research Intern., Inc.*, 523 U.S. 135, 152 (1998), "once the copyright owner places a copyrighted item into the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution."

However, the first sale doctrine does not provide a defense to infringement with respect to goods manufactured abroad.  That is the effect of section 602 of the Copyright Act.[15]  As Judge

---

17 U.S.C. § 106(3) (emphasis added).

[15]Section  602, captioned "Infringing importation or exportation of copies or phonorecords," makes it unlawful to import, without the copyright owner's authority, copyrighted copies acquired outside the United States:

11

Holwell of this Court recently held, "the first-sale doctrine does not apply to copies of a copyrighted work manufactured abroad." *Pearson Education, Inc. v. Liu*, 656 F. Supp. 2d 407, 416 (S.D.N.Y. 2009).[16] The plaintiff in Judge Holwell's case was the same company as the first-named plaintiff

---

(a) Infringing importation or exportation.--

(1) Importation.--Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501.

17 U.S.C. § 602(a)(1).  Section 602 thus prohibits unauthorized importation of copies that were lawfully made.

[16] *Accord  Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834(DCP), 2009 WL 3364037 (S.D.N.Y. October 19, 2009) ("Ultimately, the court is persuaded by the dicta in *Quality King*, which would limit section 109(a)'s coverage to U.S.-manufactured goods.)*; Pearson Educ., Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, at *4 (S.D.N.Y. May 13, 2008) ("the first sale doctrine does not . . . protect persons who purchase copies of copyrighted works outside the United States and then import them into the United States for resale")*; Lingo Corp. v. Topix, Inc.*, No. 01 Civ. 2863(RMB), 2003 WL 223454, at *4 (S.D.N.Y. Jan. 31, 2003)  ("Importation into the United States, without the authority of the owner of copyright ... of copies ... of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies ... under section 106.");  *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir.1991) ("The first sale doctrine in 17 U.S.C. § 109(a) does not . . . provide a defense to infringement under 17 U.S.C. § 602 for goods manufactured abroad.");  *Parfums Givenchy, Inc., v. Drug Emporium, Inc* ., 38 F.3d 477, 482 n. 8 (9th Cir.1994) ("holding that sales abroad of foreign manufactured United States copyrighted materials do not terminate the United States copyright holder's exclusive distribution rights in the United States under §§ 106 and 602(a)");  *Summit Tech. v. High-Line Med. Instruments Co.*, 922 F.Supp. 299, 312 (C.D. Cal.1996) ("[T]he courts appear to be in agreement in one respect: sales abroad of foreign manufactured United States copyrighted materials do not terminate the United States copyright holder's exclusive distribution rights in the United States under §§ 106 and 602(a).") (internal quotation marks omitted)); *CBS v. Scorpio Music Distribs., Inc.*, 569 F. Supp. 47, 49 (E.D. PA. 1983), *aff'd without opinion*, 738 F.2d 421 (3d Cir.1984) ( "section [109(a)] grants first sale protection to the third party buyer of copies which have been legally manufactured and sold within the United States and not to purchasers of imports such as are involved here").

*Pearson Educ., Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, at *3  (S.D.N.Y. May 13, 2008) ("the first sale doctrine does not necessarily protect persons who purchase copies of

in the case at bar, and the facts are virtually identical.  Publishers of copyrighted textbooks brought a copyright infringement claim against Internet entrepreneurs, who had purchased foreign editions, manufactured abroad, and resold them in the United States, in what the *Pearson* court deemed "a form of arbitrage" or "'parallel importation' through the 'grey market.'"  656 F. Supp.2d at 407-08. Defendants moved to dismiss the complaint on the ground that the copyrighted works were lawfully manufactured and purchased abroad.[17]  They argued that their resale activities were protected by the first-sale doctrine pursuant to 17 U.S.C.  § 109(a).

The court considered the history and purpose of § 109(a), noting "nothing suggests that the [first-sale] doctrine should not apply when a copy is manufactured abroad" and "the common law policy against restraints on trade and alienation is not limited by the place where a chattel is manufactured."  *Id* at 412-13.  Ultimately, Judge Holwell focused on *dicta* in *Quality King Distributors, Inc. v. L'anza Research International, Inc.*, 523 U.S. 135, 148 (1998), that he found persuasive and led him to conclude the first sale doctrine does *not* apply to foreign-manufactured copyrighted works.  In his *Pearson* case, Judge Holwell pointed out that in *Quality King* the Supreme Court spoke directly to whether the first-sale doctrine applies to copies manufactured abroad."  656 F. Supp.2d at 415.   The Supreme Court stated in  *Quality King*::

> If the author of the work gave the exclusive United States distribution rights – enforceable under the Act – to the publisher of the United States edition and the exclusive British

---

copyrighted works outside the United States and then import them into the United States for resale").

[17]Defendants at bar argue that authorized copies abroad are "lawfully made under this title" of § 109(a) or else copies manufactured abroad could never be legally imported to or sold in the United States.  However, defendants overlook the fact that, when a copyright owner imports the copies or authorizes their importation and sale, the copies manufactured abroad are "lawfully made" for purposes of § 109(a).

distribution rights to the publisher of the British edition, . . . presumably only those made by the publisher of the United States edition would be "lawfully made under this title" within the meaning of § 109(a). **The first sale doctrine would not provide the publisher of the British [i.e., foreign] edition who decided to sell in the American market with a defense to an action under § 602(a) (or, for that matter, to an action under § 106(3), if there was a distribution of the copies** ).

523 U.S. at 148 (emphasis added and footnote omitted).   The Supreme Court had thus "considered the fact pattern  presented by this case: one in which books manufactured by a foreign publisher for sale abroad are imported into, and distributed within, this country without the consent of the U.S. copyright holder.  The [Supreme] Court expressed the view that in these circumstances, the U.S. copyright holder is entitled to maintain an infringement action against the importer under § 602(a)." *Pearson*, 656 F. Supp. 2d at 415-16.  The quoted passage from *Quality King* is arguably *dicta*; but "if *dicta* this be, it is of the most persuasive kind." *Id.* at 416 (citation and internal quotation marks omitted).   Accordingly Judge Holwell denied defendants' motion to dismiss, allowing plaintiffs' copyright infringement action to proceed.

While lower federal courts "have divided over what it means for  a copy to be 'lawfully made'" under § 109(a) of the Copyright Act, *Pearson*, 656 F.Supp.2d at 412 (citations omitted), I agree with Judge Holwell that when the Supreme Court directly addresses that question in unanimous language, albeit *dicta*, deference must be paid by district courts.  The earlier *Pearson* decision in this court correctly assessed the import and effect of the Supreme Court's language in *Quality King* and reached a conclusion on identical facts with which I agree.  Consequently, I conclude in this case that the first sale doctrine does not apply to copies of a copyrighted work manufactured abroad.  It follows that the first sale doctrine provides no defense against a claim for infringement arising out of the distribution of such works in the United States, in violation of

§§ 106(3), 501, and 602(a) of the Copyright Act.[18]   *Accord Pearson Education, Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, *3 (S.D.N.Y. May 13, 2008) (Stein, *J.*) ("Recognizing that application of the first sale defense to all cases would vitiate section 602(a), courts have held that where the copy in question was manufactured abroad, section 109(a) does not provide a defense to a copyright infringement claim.") (citations omitted); *John Wiley & Sons, Inc.*, No. 08 Civ. 7834(DCP), 2009 WL 3364037 (S.D.N.Y. Oct. 19, 2009) (Pogue, *J.*) ("[F]ollowing the Supreme Court's *dicta* in *Quality King*, the court reads section 109(a)'s language to render the 'first sale' defense unavailable to the goods manufactured in a foreign country at issue here.").

   3.   <u>Analysis</u>

In the present case, the record demonstrates that Plaintiffs hold all 379 copyrights for the works that are the subject of Plaintiffs' summary judgment motion.  Amended Complaint ¶¶ 19, 26-30 and Schedules A and D; Plaintiffs' Rule 56.1 Statement ¶¶ 1-4; Essig. Dec. ¶ 3 and Ex. A; Murphy. Dec.¶ 3 and  Ex. B; Sampson Dec. ¶ 3 and Ex. C; Beacher Dec.¶ 3 and Ex. D.

The record also shows that Defendants purchased these Foreign Editions in India, imported them into the United States and sold them via the Internet.[19]  Plaintiffs' Rule 56.1 Statement ¶¶ 7-10;

---

[18]The Defendants misconstrue *Quality King* as holding that the first sale doctrine applies in the present case.  Defendants First Memorandum at 5-10, 14-15.  The facts in that case are clearly distinguishable from the case at bar.  The works at issue in *Quality King* were manufactured in the United States, exported and then imported back into the United States.  It is the Supreme Court's *dicta,* 523 U.S. at 148, quoted in text, that applies in this case, where the copyrighted works were manufactured abroad.

[19]Thus Defendants violated Plaintiff's exclusive rights of distribution, as set forth in 17 U.S.C. §§ 106(3), 501 and 602(a).

Dunnegan Dec, Ex. M - P. Taking the Defendants' allegations as properly supported and viewing them in their most favorable light, Kumar and Dart have created no genuine issue of material fact that would warrant a trial on Plaintiffs' copyright infringement claims. By his own words, Kumar has admitted that: (1) he sold Plaintiffs' Foreign Editions, manufactured in India; and (2) he used Dart to ship the books and deposited the money from the infringing sales directly into Dart's bank account. Kumar Letter (dated 8/7/2008), p. 1, para. 1-2, and p. 2, para. 1. Furthermore, the business records of Abebooks and Akademos reveal that Kumar and Dart indeed sold copies of each of the 379 Foreign Editions at issue on the Internet sites of these two sellers. Plaintiffs' Memorandum of Law (filed 7/31/2008), p. 6, para. 2, and Dunnegan Dec. ¶¶ 5-16, Exhibits H and K - P. *See also* 3 logs of Abebooks (CID2803897 and CID52296192) and Akademos (Jhonbooks); and Scileppi Dec. ¶¶ 6-11.

Kumar contends that he should not be held liable for the sales of Plaintiffs' Foreign Editions for two reasons. First, he asserts that he "never knew that selling these books is illegal." Kumar Letter (dated 8/7/2008), p. 1, para. 2. He further claims he relied on a leaflet and a *New York Times* article, both of which were supplied by AbeBooks and led him to believe that the sales were legal. *Id.* & two attachments (Leaflet of AbeBooks.com and Article in *New York Times*, entitled, "Students Find $100 Textbooks Cost $50, Purchased Overseas," dated October 21, 2003). Although willfulness of a defendant may bear on the issue of statutory damages under Section 503(c) , ignorance of the law is not a defense to liability.[20]

Second, Defendants seek to apply the "first sale" doctrine as a complete defense to liability

---

[20]In the words of philosopher and jurist John Selden, "Ignorance of the law excuses no man; not that all men know the law, but because 'tis an excuse every man will plead, and no man can tell how to refute him." John Selden, *Table Talk* (1689), Law.

for Plaintiff's copyrights infringement claims.  That defense is unavailable to these Defendants for the reasons stated in Part IV.A.2., *supra*.

Summary judgment will be granted as to Plaintiffs on their copyright infringement claims.

4.    Remedies

    a.    Damages

        1.    Joint and Several Liability

Kumar and Dart are jointly and severally liable for all sales of the Foreign Editions because they are principals in direct infringement.  Both participated in the sale and/or distribution of the infringing Foreign Editions.  Moreover, Kumar owns Dart and directed it to distribute the infringing copies that were sold.  Dunnegan Dec., Ex. F,  32: 1 to 33: 6; Kumar Letter (dated 8/7/2008), p. 2, para. 1.   *See Luft v. Crown Publishers, Inc.*, 772 F. Supp. 1378, 1379  (S.D.N.Y. 1991) ("All participants of a copyright infringement are jointly and severally liable.  All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.") (quotations and citations omitted); *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510, 518 (S.D.N.Y. 1985) ("An individual who causes a corporation defendant to infringe copyrights and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement.").[21]

_____

[21]*See also Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664(JGK), 2005 WL 612814, at *6  (S.D.N.Y. Mar. 14, 2005) ("it is well-established that corporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement."); *Lauratex Textile Corp. v. Alton Knitting Mills Inc.*, 517 F. Supp. 900, 904 (S.D.N.Y. 1981) ("An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement.") (citing

2.   Statutory damages under § 504(c) - $750 per infringed work

17 U.S.C. § 504(c) grants a copyright owner the right to "elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . In a sum of not less than $750 or more than $30,000 as the court considers just."

Where multiple works are infringed, the court must award damages for "each of the 'separate, individual works which were the subject of a defendant's infringing activities.'" *Pearson Educ., Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, at *4 (S.D.N.Y. May 13, 2008) (quoting *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361 (S.D.N.Y. 2003)).

Plaintiffs at bar request minimum statutory damages in the amount of $750 for each of the 379 works infringed, pursuant to 17 U.S.C. § 504(c). They are entitled to that measure. Accordingly the Court will enter judgment in Plaintiffs' favor and against Defendants, jointly and severally, in the amount of $284,250 ($750 x 379). This total is allocated among the several Plaintiffs as follows: $108,000 to Pearson for infringement of its 144 copyrights; $53,250 to Wiley for infringement of its 71 copyrights; $40,500 to Cengage for infringement of its 54 copyrights; and $82,500 to McGraw-Hill for infringement of its 110 copyrights.[22]

---

*Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161-62 (2d Cir. 1971)).

[22]Pearson Education, Inc. holds 144 of the copyrights (Essig Dec., p. 2, ¶ 3 & Ex. A); John Wiley & Sons, Inc. holds 71 (Murphy Dec., p. 2, ¶ 3 & Ex. B); Cengage Learning Inc. holds 54 (Sampson Dec., p. 2, ¶ 3 & Ex. C); and The McGraw-Hill Companies, Inc. hold 110 (Beacher Dec., p. 2, ¶ 3 & Ex. D).

b.    Injunctive Relief under § 502(a)

17 U.S.C. § 502(a)[23] confers upon district courts the discretion to grant injunctive relief "on

such terms as it may deem reasonable to prevent or restrain infringement of a copyright." In general,

a permanent injunction is proper "where liability has been established and there is a threat of

continuing infringement." *Pearson,* 2008 WL 2073491, at *4 (citations omitted).   In cases where

there is a large number of copyright violations with a continuing threat of infringement, injunctive

relief is justified. *Id.*

Pursuant to § 502(a) and in keeping with the general practices of this Circuit,[24] this Court

permanently enjoins defendants Kumar and Dart from any future infringement of the 379

copyrighted works at issue in this litigation.  Specifically, Defendants are hereby enjoined from the

manufacture, distribution, and/or sale of the these works.   Defendants are also hereby ordered to

destroy all remaining infringing books within their possession, custody, or control.


B.    Defendant Kumar's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Kumar moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction

under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In support of his motion, Kumar claims

that this Court cannot exercise personal jurisdiction over him under New York state's long-arm

---

[23]17 U.S.C. § 502(a) provides in relevant part:

Any court having jurisdiction of a civil action arising under this title may . . . grant
temporary and final injunctions on such terms as it may deem reasonable to prevent or
restrain infringement of a copyright.

[24]*See, e.g., Pearson Educ., Inc. v. Liao*, No. 07-Civ-2423 (SHS), 2008 WL 2073491, at
*4  (S.D.N.Y. May 13, 2008); *Yurman Design, Inc. v. PAJ, Inc.*, 93 F. Supp.2d 449, 466
(S.D.N.Y. 2000), *aff'd in part*, 262 F.3d 101, 118 (2d Cir. 2001).

statute, N.Y. C.P.L.R. §302(a), because he lacks the requisite minimum contacts with either the state

of New York or this District.   He further claims that this Court's exercise of jurisdiction over him

would violate the Fourteenth Amendment's Constitutional guarantee of due process. For the reasons

set forth below, the motion is denied.

### 1.   Defendant's Argument

Defendant bases his argument that he is not present in New York for jurisdictional purposes

on two prongs. First, Kumar asserts that he neither lives nor owns property in New York.   Affidavit

of Vinod Kumar ¶¶ 3, 7-8.   Rather, he is a resident and citizen of India who travels to the United

States "on several occasions." Defendants' First Memorandum (filed 1/8/2009), p. 18,  para. 2; *see*

*also* Affidavit of Vinod Kumar ¶¶ 3-4.   Second, and in contrast to his own statements, Kumar

contends that he does not work in New York or engage in a systematic course of doing business in

New York, and thus has no office or employees here.   This assertion is belied in part by Kumar's

own statements.[25]   In sum, Kumar contends that he has "no relationship" and " no contacts" with

New York or the United States.   Affidavit of Vinod Kumar ¶¶ 5-6.

### 2.   Rule 12(b)(2) - Standard of Review

A motion to dismiss must be granted if a court lacks personal jurisdiction over a defendant.

Fed. R. Civ. P. 12(b)(2);[26] *see Wiley & Sons, Inc. et al. v. Treeakarabenjakul et al.*, No. 09 Civ.

---

[25]*See, e.g.*, Kumar Affidavit ¶ 4, in which Kumar states, "I travel to the United States, *specifically to New York for business reasons* as required."  (emphasis added).

[26]Rule 12(b)(2) instructs "How to Present Defenses":

2108(CM), 2009 WL 1766003, at *3 (S.D.N.Y. June 18, 2009), (citing *Centrifugal Force, Inc. v. Softnet Commc'n., Inc.*, No. 08 Civ. 5463(CM)(GWG), 2009 WL 1059647, at *7 (S.D.N.Y. April 17, 2009)). The plaintiff bears the burden of proving personal jurisdiction over a defendant. *Philip Morris USA, Inc. v. Veles Ltd.*, No. 06 CV 2988(GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (citing *KVOS, Inc. v. Assoc. Press*, 299 U.S. 269, 278 (1936)).  However, pleading a legally sufficient basis for jurisdiction satisfies that burden; and  prior to discovery, only a *prima facie* showing is required to meet that burden. *Wiley*, 2009 WL 1766003, at *3; *see also CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (although plaintiff ultimately bears the burden of establishing jurisdiction over the defendant, "until an evidentiary hearing is held, it [plaintiff] need make only a prima facie showing by its pleadings and affidavits that jurisdiction exists."); *accord Philip Morris USA, Inc.*, 2007 WL 725412, at *3.

Because a motion to dismiss for lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." *Energy Brands, Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 463 (S.D.N.Y. 2008) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n. 2 (S.D.N.Y. 1995)).  When considering the motion, the court must construe the pleadings liberally for the benefit of the plaintiffs. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *Wiley & Sons*, 2009 WL 1766003, at *3.

---

Every defense to a claim for relief
in any pleading must be asserted in the responsive pleading if
one is required. But a party may assert the following defenses by
motion:
. . .
(2) lack of personal jurisdiction; . . .

"In a federal question case where the defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules." *Philip Morris USA, Inc.*, 2007 WL 725412, at *3 (quoting *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338; and the relevant statute, the Copyright Act of 1976, does not separately provide for nationwide jurisdiction. Therefore, the law of New York, the place where the court sits, determines the jurisdictional reach of a New York federal court sitting in a copyright infringement action.. Fed. R. Civ. P. 4(k)(1)(a); [27] *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990); *Wiley & Sons*, 2009 WL 1766003, at *3; *Pearson Educ. v. Shi*, 525 F. Supp. 2d 551, 555 (S.D.N.Y. 2007).

As stated *supra*, Plaintiffs bear the burden of showing that jurisdiction over Kumar is proper under New York law.  In addition, Plaintiffs must demonstrate that such an exercise of personal jurisdiction satisfies due process. *See, e.g., Bank Brussels Lambert v. Gonzalez*, 305 F.3d 120, 127 (2d Cir. 2002).


    3.    <u>Jurisdiction under New York State Law</u>

        a.    <u>Personal Jurisdiction Under N.Y. C.P.L.R. §308(1) - Service of Process</u>

In order for this Court to exercise personal jurisdiction over Defendant Kumar, there must

---

[27]Rule 4(k)(1)(A) describes "Territorial Limits of Effective Service":

(1) *In General.* Serving a summons or filing a waiver of service
establishes personal jurisdiction over a defendant:
(A) who is subject to the jurisdiction of a court of general
jurisdiction in the state where the district court is located; . . .

Fed. R. Civ. P. 4(k)(1)(A).

be an appropriate process of service on Kumar, providing him with adequate notice of the claim, and an adequate basis for jurisdiction.    In the present case, Plaintiffs contend that Kumar has been properly served in that he was personally served within the state of New York.   Pursuant to N.Y. C.P.L.R. § 308(1), the relevant New York law regarding service of process, "[p]ersonal service upon a natural person shall be made by any of the following methods . . . [including] 1.  by delivering the summons within the state to the person to be served."   N.Y. C.P.L.R. § 308(1) (2008).

Similarly,  Federal Rule of Civil Procedure 4(e)(2)  "specifically authorizes personal service of a summons and complaint upon an individual physically present within a judicial district of the United States; and such personal service comports with the requirements of due process for the assertion of personal jurisdiction."[28]  *Kadic v. Karadzic*, 70 F.3d 232, 247 (2d Cir. 1995) (citing *Burnham v. Superior Court of California*, 495 U.S. 604 (1990)); *see also* Moore's Federal Practice 3d (Jurisdiction) § 108.111 (2009) ("Personal service on the defendant in the forum state is obviously adequate notice.").

In the present case, Plaintiffs have provided undisputed evidence that Kumar was personally served in New York City, New York, on January 17, 2008.   *See* Scileppi Dec. ¶ 4 and Return of

---

[28]Rule 4(e), entitled "Serving An Individual within a Judicial District of the United States," provides in relevant part:

> Unless federal law provides otherwise, an individual
> — other than a minor, an incompetent person, or a person
> whose waiver has been filed — may be served in a judicial district
> of the United States by:
>
> . . .
> (2) doing any of the following:
> (A) *delivering a copy of the summons and of the complaint
> to the individual personally* . . . .

Fed. R. Civ. P. 4(e)(2) (emphasis added).

Service, specifying that on 1/17/08, William Dunnegan served Kumar personally at the offices of Dunnegan LLC, 350 Fifth Avenue, New York, NY 10118.   Kumar has thus been properly served to allow this Court to exercise personal jurisdiction over him.[29]


        b.    Due Process

After determining that service was properly effected, a court must analyze whether there is an adequate basis for jurisdiction – i.e., whether the exercise of personal jurisdiction over the defendant comports  with "traditional notions of fair play and substantial justice."   *International Shoe Co. v.  State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)( quoting *Milliken v. Meyer*, 311 U.S. 457, 458 (1940)).   To satisfy the fairness standard of due process, the defendant must have "minimum contacts" with the forum state. *International Shoe*, 326 U.S. 316.

---

[29]In addition to Kumar's presence in the state, Plaintiffs assert an alternative basis for this Court's jurisdiction over Kumar – i.e.,  specific jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1),  due to his Internet sales and shipment of books to residents of  New York State.  Plaintiffs' Memorandum of Law (filed 1/14/2009), p. 3-4.    *See* N.Y. C.P.L.R § 302(a)(1) ( a court may exercise personal jurisdiction over a non-domiciliary if:  (1) the non-domiciliary transacts business within the state and (2) the cause of action against the non-domiciliary arises out of that business activity).  For the reasons stated in text, Plaintiffs do not need to invoke the New York long-arm statute to establish personal jurisdiction over Defendants, and the Defendants' analysis of the statute misses the mark.  However, if Plaintiffs did need to avail themselves of the long-arm statute, it would confer personal jurisdiction over these Defendants.  Kumar "purposely avail[ed himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws. " *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S. 2d 34, 229 N.E.2d 604 (1967) (quotations omitted); *accord Mayes v. Leipziger*, 674 F.2d 178, 183 (2d Cir.1982).   Moreover, his internet sales and shipment of books into New York are the basis of the copyright and trade infringement actions at issue.  Defendants' purposeful contacts with New York are thus also sufficient to enable this court to exercise personal jurisdiction pursuant to New York's long-arm statute. *See, e.g., Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 558 (S.D.N.Y. 2007).

The due process standard is met when a non-domiciliary defendant purposefully avails himself of the privilege of conducting business in the forum state, such that "he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Moreover, jurisdiction is proper where a defendant's contacts with the state are the proximate result of his own actions, creating a "substantial connection with the forum State." *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957) (due process standard met where out-of-state defendant engaged in business with state resident through mail).

In the present case, Kumar availed himself of the privileges of (1) conducting sales to residents of New York and (2) distributing Plaintiffs' Foreign Editions in New York.[30]   He thus engaged in actions such that he should have reasonably anticipated that he could be haled into court in New York.

However, the inquiry does not end there.  Once it has found that the defendant has the requisite minimum contacts with the forum state, the Court must determine whether exercising personal jurisdiction is "reasonable under the particular circumstances of the case." *Metro. Life Ins.*

---

[30]Plaintiffs have submitted evidence that Kumar made at least 35 sales of Plaintiffs' Foreign Editions to residents of New York.  Scileppi Dec., pp. 3-4, ¶¶ 8-11, and Schedules A-D (detailing 35 sales into New York); *see also* Banks Dec., p. 1-3,  ¶¶ 2-3 (describing 3 Internet sales where books were sent to purchaser Banks at her New York City address).  Furthermore, the fact that Kumar made these sales via the Internet does not weigh against personal jurisdiction. As this district recently stated in *Wiley & Sons, Inc. et al. v. Treeakarabenjakul et al.*, No. 09 Civ. 2108(CM), 2009 WL 1766003 (S.D.N.Y. June 18, 2009), the fact that a copyright infringement defendant, who sold plaintiffs' unauthorized works on the Internet, "never set foot in New York . . . is irrelevant for personal jurisdiction purposes.  It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.*, at *6.

*Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996).  This Court must assess whether the

defendant has made a compelling case that jurisdiction is unreasonable in light of such factors as: (1)

the burden imposed on the defendant; (2) the forum state's interest in adjudicating the dispute; (3)

the plaintiff's interest in obtaining convenient, effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of controversies; and (5)  the shared interest of the

states in furthering fundamental substantive social policies.  *Id.* (citing *Asahi Metal Industry Co. v.*

*Superior Court*, 480 U.S. 102, 113-14 (1987) and  *Burger King*, 471 U.S. at 477) .

In this case, Kumar has failed to make a compelling case that personal jurisdiction is not

reasonable.  *See Wiley & Sons, Inc.*, 2009 WL 1766003, at *8:

> The copyright suit at bar is governed by federal law, and New York has an interest in
> adjudicating the claims of its plaintiff corporate citizens that have previously sought similar
> relief in this forum. *See, e.g., Pearson Educ., Inc. v. Liao*, No. 07 Civ. 8540 (SHS), 2008 WL
> 2073491 (S.D.N.Y. May 13, 2008); *Cenage Learning [v. Buckeye Book]*, 531 F. Supp. 2d 596
> [(S.D.N.Y. 2008)]; *Pearson Educ.*, 525 F. Supp. 2d 551. Though litigating in New York may
> impose some financial burden on defendant, it can be mitigated by telephonic and electronic
> communication and is insufficient to render the exercise of jurisdiction constitutionally
> unreasonable. *See Centrifugal Force [v. Softnet Communication, Inc.*, No. 08 Civ.
> 5463(CM)(GWG)], 2009 WL 1059647, at *8 [(S.D.N.Y. April 17, 2009)].

In sum, the undisputed facts of this case make personal jurisdiction over Kumar reasonable

and consistent with due process.  As in *Wiley & Sons, Inc., supra*,  plaintiff publishers have an interest

in adjudicating this case in New York where previous such claims have been litigated.  Moreover,

Kumar's own actions suggest that it would not be unduly burdensome for him to defend this action

in New York.  He has admittedly traveled to New York on numerous occasions, distributing the

copyrighted works he sold on the Internet.[31]    Kumar Letter (dated 8/7/2008), para. 2; Defendants'

---

[31]The record reflects that Kumar was personally involved in the shipping and distribution
of the copyrighted works at issue.  Kumar Letter (dated 8/7/2008), p. 1, para. 2 ("I was frequent

First Memorandum of Law (filed 1/8/2009), p. 18, para. 2; Affidavit of Vinod Kumar ¶ 4.  He has

shown an ability to communicate electronically by accessing the Internet to sell volumes of Plaintiffs'

Foreign Editions. Kumar Letter (dated 8/7/2008), p. 1, para. 1-2.  He may therefore travel to New

York and/or mitigate his litigation expenses by communicating electronically.   Under these

circumstances, the exercise of personal jurisdiction over Kumar under New York's long-arm statute

is consistent with traditional notions of due process.  Accordingly, Kumar's motion to dismiss under

Fed. R. Civ. P. 12(b)(2) will be denied.


C.      Defendants' Motions for Failure to State A Claim and/or Summary Judgment

        Defendants Kumar and Dart seek a ruling from this Court dismissing Plaintiffs' complaint on

two alternative grounds.  Defendants' First Motion to Dismiss (filed 1/8/2009).     Specifically,

Defendants seek either (1) dismissal of Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) for

failure to state a claim upon which relief can be granted or (2) summary judgment pursuant Rule 56.

Defendants' First Motion to Dismiss (filed 1/8/2009) ¶ 1; *see* Fed. R. Civ. P. 12(b)(6) & 56.

Defendants request to recover their costs, disbursements and attorneys fees pursuant to 17 U.S.C.

§505, the provision of the Copyright Act that provides "appropriate remedies for infringement."

Defendants' First Motion to Dismiss (filed 1/8/2009) ¶ 2.  The Court will first address Defendants'

alternative motions as to each claim.

-------------------------------------

traveler to US . . .  I sold these books . . . thru [sic] these [web]site[s] and got various positive
remarks from the buyers.  I exported these books through abebooks.com and textbookx.com . . .
.").  *See also* deposition testimony of Yadav (detailing Kumar's New York City activities, such
as  traveling to JFK Airport and Manhattan office of Dart to pick up books to be distributed to
Internet buyers).   Dunnegan Dec., Ex. F, 33: 23 to 35: 12;  63: 19 to 65: 19.

1.    Copyright Infringement

In the present case, as to count one of the complaint for copyright infringement, this Court has already considered in depth the undisputed facts in the parties' affidavits and submissions and determined that Plaintiffs are entitled to judgment as a matter of law.  Even when resolving all ambiguities and drawing all reasonable inferences in Defendants' favor, no reasonable trier of fact could find in Defendants' favor.  *See, e.g.*, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88.  This Court therefore need not reconsider the facts to construe them in Plaintiffs' favor.  There are no genuine issues of material fact favoring the Defendants with respect to copyright infringement; and Plaintiffs are entitled to judgment as a matter of law.

Moreover, while  addressing Plaintiffs' motion for summary judgment on the copyright infringement claim, this Court considered and rejected Defendants' counter-argument for judgment in their favor on the basis that the "first sale doctrine" provides a complete defense to copyright infringement under 17 U.S.C. § 602 for goods manufactured abroad.  Nothing more need be said on that subject.  Defendants' cross-motion for summary judgment on count one of the complaint will be denied.

2.    Trademark infringement

Defendants have moved for a dismissal of Plaintiffs' second claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(a),[32] claiming that Plaintiffs have not stated a claim upon

---

[32]Section 1114(a) provides:

§ 1114.  Remedies; infringement; innocent infringement by printers and publishers (1) Any person who shall, without the consent of the registrant--

which relief can be granted.  In their Amended Complaint, Plaintiffs allege that "[d]efendants have infringed the Pearson, Wiley and McGraw-Hill Trademarks in violation of 15 U.S.C. § 1114(a) by using them on and/or in connection with the works that they have sold." Amended Complaint ¶ 40. Moreover, Defendants' actions have "irreparably damaged plaintiffs and may continue to do so" by causing "harm to their good will and reputation in the marketplace for which money cannot compensate." *Id.*

a.   Rule 12(b)(6) Standard

Rule 12(b) (6) "tests, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir.2003).  It "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Id.*

In deciding a Rule 12 (b) (6) motion, the court accepts "the allegations contained in the complaint as true" and draws "all reasonable inferences in favor of the nonmoving party, *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), unless the allegations are 'supported by mere conclusory statements,' *Ashcroft v. Iqbal*, ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)." *Hayden v. Paterson*, 594 F.3d 150, 157 (2d Cir. 2010). *See also Arnold v. ABC, Inc.*, No. 06 Civ.

---

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . .

15 U.S.C. § 1114(a) (1).

1747(GBD), 2007 WL 210330, at * 2 (S.D.N.Y. Jan. 29, 2007); *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).

In general, "'[w]hile a complaint attacked by a Rule 12( b)( 6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *[Bell Atlantic Corp. v.] Twombly,* 550 U.S. [544,] at 555, 127 S. Ct. 1955 [(2007)]. Instead, '[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' *Id.* . . What is required are 'enough facts to state a claim to relief that is plausible on its face.' *Id.* at 570 . . . . In the words of the Supreme Court's most recent iteration of this standard, '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)." *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation marks omitted, alteration in original, and citations omitted). Where, however, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Id.* (citing *Iqbal*, 129 S. Ct. at 1950).

b.     Trademark Infringement - Elements

To prevail on a statutory trademark infringement claim under 15 U.S.C. § 1114(a) (1), a plaintiff must demonstrate an infringement of his trademark, i.e., his right to a word or symbol

indicating the origin or source of his product.[33]  *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581 (2d

Cir. 1990).  He must "establish that the symbols in which this property right is asserted are valid,

legally protectible trademarks; that they are owned by plaintiff; and that defendant's subsequent use

of similar marks is likely to create confusion as to origin of the goods."  *Id.* at 581-82  (citing *Estate

of Presley v. Russen*, 513 F. Supp. 1339, 1362 (D.N.J. 1981), and cases cited therein).[34]

Moreover, "[i]t is well settled that the crucial determinant in an action for trademark

infringement" is "whether there is any likelihood that an appreciable number of ordinarily prudent

purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in

question." *Pirone* at 894 F.2d at 584 (citations omitted).  In order to be confused, a consumer need

not believe that the defendant actually produced the item bearing the plaintiff's trademark. *Id.*  The

required element of confusion is satisfied if the public believes "that the mark's owner sponsored or

---

[33]As the Second Circuit explained in *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581 (2d Cir. 1990):

> [A] trademark is "not property in the ordinary sense," but only a word or symbol indicating the origin or source of a product.  The owner of the mark acquires the right to prevent his goods from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks.

(citations omitted); *see also Kipling v. G.P. Putnam's Sons*, 120 F. 631, 635 (2d Cir. 1903)("A trade-mark is a word, symbol or device by which the wares of the owner are known in trade. Its object is, first, to protect the party using it from competition with inferior articles, and, second, to protect the public from imposition.").

[34]*See also ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 225 (2008) ("What plaintiff needs to demonstrate is that it has a valid mark entitled to protection and that defendant's use of it is likely to cause confusion."); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747(GBD), 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007) ("To state a claim for trademark infringement under sections 32(1)(a) and 43(a) of the Lanham Act, plaintiff must allege facts which establish that her mark merits protection and that Defendants' use of her mark is likely to cause consumer confusion as to the mark's source.").

otherwise approved the use of the trademark." *Id.* (citing *Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir.1979)).

<br>

      c.     Rule 12(b)(6)(Motion)

     In the present case, Defendants assert that Plaintiffs have failed to state a claim with respect to trademark infringement because, "pursuant to the 'first sale' doctrine, a trademark owner cannot control distribution of a trademarked item beyond its first sale."  Defendants' First Memorandum of Law (filed 1/8/2009), p. 15, para. 3.  Defendants then cite *Matrix Essentials v. Quality King Distribs.*, 522 F. Supp. 2d 470, 479 (E.D.N.Y. 2007), for the proposition that re-sale of genuine goods "does not support a claim or infringement nor unfair competition."  *Id.*  Defendants point out that "[t]he amended complaint does not allege that defendants are selling counterfeit or pirated books."  *Id.*, p. 16, para. 1.  Moreover, "[i]n their complaint plaintiffs' [sic] do not allege that the defendants' sale of their books caused any confusion to the consumers." *Id.* p. 15,  para. 5.  Although the books were manufactured abroad, the trademark owner affixed the mark of "Foreign Editions" to the product, thereby alleviating such confusion. Furthermore, "[a]ny confusion on [the] part of the consumers due to the difference in the paper quality, bindings and printing of the books are due to the plaintiffs' own actions in manufacturing books abroad and trying to save money by manufacturing cheaper Foreign Editions." *Id.*, p. 16, para. 3

     Defendants misapply *Matrix* to the present case.  In *Matrix*, all of the hair care products at issue were manufactured and distributed within the United States and of the same level of quality. The court thus stated that "under the "first sale" doctrine, long a basic premise of trademark law, a trademark owner cannot control distribution of a trademarked item beyond its first sale. The re-sale

32

of such genuine goods does not create consumer confusion and supports neither a claim of infringement nor unfair competition."   522 F. Supp. 2d at 478.

Indeed, "the Lanham Act does not block reimportation and sale of genuine articles under their real trademarks." *See R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 700 (7th Cir.2006) (citing *NEC Elec. v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir.1987)). "But this [first sale] principle does not apply if the domestic and foreign products are materially different, for then sale of the foreign product in the United States under domestic markets has a potential to mislead or confuse consumers about the nature or quality of the product they are buying; they will assume it to be the same as the normal domestic product and be disappointed." *R.J. Reynolds Tobacco Co.* , 462 F.2d at 700 (citing *Lever Brothers Co. v. United States*, 877 F.2d 101 (D.C. Cir.1989), 981 F.2d 1330 (D.C. Cir.1993);and *Société Des Produits Nestlé, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir.1992)). *See also Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 73 (2d. Cir. 1987).

Plaintiffs' Foreign Editions were substantially and  materially different from their United States Editions. Amended Complaint ¶¶ 17-18.  In fact, they were produced exclusively outside of the United States, of lower price and inferior printing quality.  *Id.*; Essig Dec. ¶ 5; Murphy Dec. ¶ 4 ; Sampson Dec. ¶ 6; Beacher Dec. ¶ 5; Plaintiffs' Rule 56.1 Statement ¶ 5. The first sale doctrine thus does not apply in this case.

Furthermore, Plaintiffs have adequately pled the elements of a trademark infringement claim.[35]

---

[35]In so doing, Plaintiffs have fulfilled their Rule 8(a) requirement to in that their complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "The purpose of the rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer." *Franklin Electronic Publishers, Inc. v.. Unisonic Products Corporation*, 763 F. Supp. 1, 4

They have detailed that they legally and exclusively own the rights to the trademarks at issue. Amended Complaint ¶¶ 19-23, 36-39; *see also* Plaintiffs' Rule 56.1 Statement ¶¶ 1-4.[36]  These trademarks are "well-known" and protected by Plaintiffs. Amended Complaint ¶¶ 20-23. Defendants have purchased Plaintiffs' Foreign Editions without permission and resold them on the Internet to purchasers in United States. *Id.* ¶ 24. Defendants have caused Plaintiffs irreparable damage to their "good will and reputation in the marketplace" on the basis that Defendants have used their trademarks "on and/or in connection with the works that they have sold." *Id.* ¶¶ 24, 40-41, 45.

Plaintiffs have thus pled that Defendants have used their trademarks without permission to sell Foreign Editions in a market intended only for United States Editions. *Id.*, ¶¶ 17-18, 24. Use of Plaintiffs' trademarks without permission, especially in an unintended market gives rise to the possibility of confusion among consumers. The consumers in this case, who purchased Plaintiffs' Foreign Editions from Defendants on the Internet, could likely be confused into believing that Plaintiffs had sponsored and/or approved of such sales and/or that the quality of the products purchased was that of Plaintiffs' higher quality editions usually sold in the United States (i.e., United States Editions).[37]

---

(S.D.N.Y. 1991) (quotation marks and citation omitted).

[36]Plaintiffs' claim for trademark infringement adopts by reference the previous paragraphs (¶¶ 1-34) of their Complaint in accordance with Rule 10 (c) of the Federal Rules of Civil Procedure ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

[37]This district has recently found it sufficient for a plaintiff to plead the facts giving rise to confusion versus an outright statement alleging confusion in a Lanham Act trademark infringement case.  See *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 226-27 (S.D.N.Y. 2008) (finding confusion adequately pled where "[t]o the court's eye," the two competing logos were "similar enough that a consumer might well confuse them"). In that case, the court made a

Plaintiffs' claim for trademark infringement thus has "facial plausibility" under *Iqbal*. Plaintiffs have pled "factual content that allows the court to draw the reasonable inference" that Defendants are liable for using Plaintiffs' trademarks in an effort to mislead the public for financial gain. Plaintiffs have set forth a valid claim for trademark infringement.

        d.    Summary Judgment

With respect to summary judgment, taking care to evaluate Defendants' motion on its merits and to draw all reasonable inferences against Defendants,[38] this Court finds that there exists a genuine issue of material fact:  whether consumers were in fact misled as to the nature and quality of the products they purchased on the Internet from Defendants.    First of all, Defendants' sole argument for dismissal is the question of law regarding the "first sale" doctrine.  That argument, as explained *supra*, fails.  Second, Plaintiffs have established sufficient facts in their Statement of Undisputed Facts and affidavits to allow their claim to proceed to trial.  Specifically they have shown that they own valid, legally protectible trademarks for all of the editions at issue in this litigation.  Second, they have alleged sufficient facts to create a genuine issue as to whether Defendants' actions in selling their Foreign Editions on the Internet in fact misled and confused consumers into believing that they were purchasing Plaintiffs' higher quality, United States Editions.[39]    The evidence is such that a

similar statement regarding pleading "confusion" for common law trademark infringement:  "As for pleading likelihood of confusion, it is enough to say that . . . [the trademark owner] was sufficiently worried about the likelihood of confusion to sue . . . [the defendant] over its use" of the trademark at issue. *Id.* at 230.  The motion to dismiss was thus denied. *Id.*

[38]*See Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993).

[39]For evidence of the Defendants' many alleged unlawful sales of Plaintiffs' copyrighted editions to United States consumers via the Internet, *see* Kumar Letter (dated 8/7/2008), para. 1;

reasonable jury could potentially return a verdict in favor of Plaintiffs, the nonmoving party.

Defendants, on the other hand, offer no contradictory evidence. They merely offer bald and conclusory defenses that any so-called "confusion" created was the fault of the Plaintiffs due to their business decision to manufacture Foreign Editions of inferior quality. Such unsupported statements are insufficient for this Court to find in their favor on the element of confusion. Resolving all ambiguities and drawing all reasonable inferences in the non-movant's favor, Defendants are not entitled to judgment as a matter of law. Defendants' motion for summary judgment on Plaintiffs' trademark infringement claim will be denied.

3.    Common Law "Unfair Competition" Under New York State Law

With respect to Plaintiffs' third cause of action, common law "unfair competition" under New York law, Defendants address their alternative motions for failure to state a claim and summary judgement with one brief paragraph and one assertion. Defendants' First Memorandum of Law (filed 1/8/2009), p. 16-17. Namely, they argue that this claim fails because "[t]here is nothing unfair about reselling non-infringing copies for which the plaintiffs' [sic] were compensated when the books were first sold abroad." *Id.* They once again cite *Quality King Distributors, Inc. v. L'Anza Research Int'l., Inc.*, 523 U.S. 135, 152 (1998), to argue that the "first sale" doctrine forbids Plaintiffs from restraining trade. *Id.* Defendants thus attempt to rehash their "first sale" argument. Because the "unfair competition" claim in this case is based on "trademark infringement," Defendants' argument regarding *Quality King* and the "first sale" doctrine once again fails for the reasons set forth *supra*.

---

Dunnegan Dec., Ex. F,  63: 10-15 to 72: 11-18 and Ex. I; Banks Dec. ¶ 3;  Amended Complaint, p. 4, ¶12; Defendants' First Memorandum of Law (filed 1/8/2009), p. 4, ¶12.

a.   "Unfair Competition" - Elements

Under New York law, the basic issue in a cause of action for unfair competition is "whether the acts complained of are fair or unfair." *Capitaland Heating and Cooling, Inc. v. Capitol Refrigeration Co., Inc.*, 134 A.D.2d 721, 521 N.Y.S.2d 202 (N.Y.A.D. 3 Dept. 1987); *Cigogne, Inc. v. Luxury Trading Corp.*, 13 A.D.2d 928, 929, 216 N.Y.S.2d 558 (N.Y.A.D. 1961). "Resolution of that issue requires a complex factual analysis of a variety of factors including the character and circumstances of the business  and the nature of the alleged unfair practices." *Captialand Heating*, 134 A.D.2d at 722  (citations omitted).

"In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 226-27 (S.D.N.Y. 2008) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir.1995)); *see also  Noble v. Great Brands of Europe, Inc.*, 949 F. Supp. 183, 188  (S.D.N.Y. 1996)*; Beverage Marketing USA, Inc. v. South Beach Beverage Co., Inc.*, 20 A.D.3d 439, 439-40; 799 N.Y.S.2d 242  (N.Y.A.D. 2 Dept. 2005).  *Accord Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir.1994) (claims alleging trademark and unfair competition must be supported by a showing of a likelihood of consumer confusion as to the origin of goods).

Some courts have held that for such confusion to exist, the trademark at issue must have acquired a "secondary meaning." *Jones Apparel Group, Inc. v. Piccone* et al., No. 94 CIV. 0754 (LMM), 1994 WL 260767, at *3 (S.D.N.Y. June 8, 1994) ("Generally, a claim asserting violation of the New York common law of . . .  unfair competition must allege both that the trademark allegedly being infringed has acquired a 'secondary meaning' and that the result of the alleged infringement is

37

a likelihood of confusion between the marks of the alleged infringer and the charging party.'");
*Adirondack Appliance Repair, Inc. v. Adirondack Appliance Parts, Inc.*, 148 A.D.2d 796, 798, 538
N.Y.S.2d 118 (N.Y.A.D. 3 Dept. 1989) (requiring additional element of "secondary meaning" in case
based on trademark infringement, versus "unfair competition").   "A trademark or trade name will
be found to have acquired a  secondary meaning where consumers have come to associate the mark
with goods or services from a particular source." *Jones Apparel*, 1994 WL 260767 at \*3.

Other courts have held that a showing of secondary meaning is not necessary to prove unfair
competition where the plaintiff demonstrates a "likelihood of confusion" and defendant infringer's
actions are "imbued with an odor of bad faith."  *Id.* at \*3-4 (citing *Laureyssens v. Idea Group, Inc.*,
964 F.2d 131, 138 (2d Cir. 1992)).

Traditionally, there must be "some element of bad faith" in an unfair competition claim.
*Noble*, 949 F. Supp. at 188; 815; *Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 649 (2d
Cir.1988).  However, with regard to trademark infringement under unfair competition, a showing of
"bad faith or fraudulent intent" is not always a prerequisite.  *See, e.g., Adirondack Appliance Repair,
Inc.*, 148 A.D.2d at 798 (showing of bad faith or fraudulent intent by party allegedly infringing upon
trademark, engaging in unfair competition by using mark or diluting markholder's reputation, was not
prerequisite to granting of injunctive relief in favor of markholder); *see also  Hill's Supermarkets, Inc.
v. Stony Brook Dairies, Inc.*, 7 A.D.2d 756, 181 N.Y.S.2d 48, 50 (N.Y.A.D. 1958) ("In our opinion
actual proof of deception, misrepresentation, confusion or loss of business is unnecessary. The
likelihood thereof is sufficient.").

Moreover, where the defendant is aware of the existence of the plaintiff's mark and proceeds
to use it in violation of unfair competition, a finding of "bad faith" has been inferred.  *See, e.g.,*

38

*Wyndham Co. v. Wyndham Hotel Co.*, 176 Misc.2d 116, 122, 670 N.Y.S.2d 995 (N.Y. Sup. 1997) (stating that "[i]n this circuit, proof of **actual knowledge can give rise to an inference of bad faith**" where defendant hotel violated "gentleman's agreement" by using plaintiff's mark after becoming aware of its existence) (emphasis added).   Infringers' actions may also be imbued with bad faith where their practices include "palming off, actual deception, appropriation of the property of another, and deliberate copying." *Jones Apparel Group, Inc.*, 1994 WL 260767, at *4 ((citing *Laureyssens.*, 964 F.2d at 138).

         b.      Rule 12(b)(6) Motion

        In the present case, Plaintiffs allege that Defendants have willfully infringed their copyrights and trademarks by purchasing Plaintiffs' Foreign Editions outside of the United States and reselling them via the Internet to consumers in the United States.   Amended Complaint ¶¶ 24, 33, 42. [40] Plaintiffs have further alleged that their trademarks are "well-known" and protected by Plaintiffs. *Id.* ¶¶ 20-23.  Defendants have used these trademarks "on and/or in connection with the works that they have sold." *Id.* ¶¶ 40-41.  In so doing, Defendants have irreparably damaged and continue to damage Plaintiffs' good will and reputation in the market place. *Id.* ¶ 41, 45.  Defendants' ensuing "ill-gotten gains" should subject them "to punitive damages in an amount to be determined by the trier of fact." *Id.* ¶ 45, and p. 12, ¶ G.

        With respect to Defendants' intent, Plaintiffs assert that Defendants have acted "willfully" and in such a way as to give rise to punitive damages.   Amended Complaint ¶¶ 42, 45.  By definition,

---

         [40]As in their second claim, Plaintiffs incorporate by reference the previous paragraphs of their Complaint (¶¶ 1-43) into their unfair competition claim.  Such incorporation complies with Fed. R. Civ. P. 10 (c).

"willfully" suggests that something is done with intention. *See, e.g., Black's Law Dictionary* (8th ed. 2004) (defining "serious and willful misconduct" as "[a]n intentional act performed with the knowledge that it is likely to result in serious injury").   Such conscious intention may, in other areas of the law, suggest "bad faith" or not.[41]

In the trademark infringement context of common law "unfair competition," an allegation of the defendant's conscious awareness of his violation may be sufficient in lieu of "bad faith."   By alleging that Defendants have acted willfully, Plaintiffs in the present case claim that they acted with consciousness in making the unlawful Internet sales of Plaintiffs' Foreign Editions to purchasers in the United States.   Such allegations suffice with respect to intent.

Second, by alleging that Defendants have used their trademarks, and consequently harmed Plaintiffs' goodwill, one can plausibly infer that Defendants have allegedly created the requisite confusion in the minds of the Internet consumers with regard to the products sold.   *See* discussion regarding alleged "confusion" in Section IV. C. 2., *supra*.

With respect to "secondary meaning," assuming without deciding that it is required, Plaintiffs have alleged that their trademarks are "well-known," and that Plaintiffs are established publishers in the area of educational textbooks.   Amended Complaint ¶¶ 13-18, 21-23.   Such facts are sufficient to establish that their trademarks carry a "secondary meaning" in the area of educational textbooks. In other words, Plaintiffs' trade names have become associated in the public's mind with Plaintiffs

---

[41] *See, e.g., Black's Law Dictionary* (8th ed. 2004) (defining "willful" as "[v]oluntary and intentional, but not necessarily malicious. . . . The word 'wilful' or 'wilfully' when used in the definition of a crime, it has been said time and again, means only intentionally or purposely as distinguished from accidentally or negligently and does not require any actual impropriety; **while on the other hand it has been stated with equal repetition and insistence that the requirement added by such a word is not satisfied unless there is a bad purpose or evil intent.**") (emphasis added).

and hence have created an expectation of a certain level of quality (i.e., the higher quality of United States Editions).[42] *See, e.g., Adirondack Appliance Repair, Inc.*, 148 A.D.2d at 798 (holding plaintiff had "established a likelihood of confusion and secondary meaning" where plaintiff was an established business and thus known to knowledgeable dealers in the industry by its trade name).

Lastly, this Court notes that this district has held that "[a]" claim of unfair competition under New York Law is analyzed in the same manner as a trademark infringement claim under the Lanham Act. *Arnold v. ABC, Inc.*, No. 06 Civ. 1747(GBD), 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir.2006) and *Information Superhighway, Inc. v. Talk America, Inc.*, 395 F.Supp.2d 44, 56 (S.D.N.Y. 2005) ("The elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims.")).    Where Plaintiffs have incorporated all previous paragraphs of their Complaint (¶¶ 1-43) into their third claim, including their allegations for their second claim of trademark infringement under the Lanham Act, their claim for common law unfair competition should be deemed adequately pled.[43]

Reading Plaintiffs' claims generously, accepting the truth thereof and drawing reasonable inferences from the allegations, the Court finds that Plaintiffs have alleged an "unfair competition" claim with "facial plausibility." In accordance with *Iqbal*, Plaintiffs have pled "[f]actual allegations . . . enough to raise a right to relief above the speculative level." Specifically, they had pled "factual

---

[42]*See, e.g.*, Amended Complaint ¶¶ 13-23.

[43]The *Arnold* court set forth the standard for both claims, stating that "[t]o state a claim for trademark infringement under . . . the Lanham Act, plaintiff must allege facts which establish that her mark merits protection and that Defendants' use of her mark is likely to cause consumer confusion as to the mark's source." 2007 WL 210330, at *2.

content that allows the court to draw the reasonable inference" that Defendants willfully used Plaintiffs' trademarks, misleading and/or confusing the public, and thereby harming Plaintiffs' good will or reputation in the marketplace. The Defendants' motion for failure to state an "unfair competition claim" should be denied.

### c.   Summary Judgment

Lastly, Defendants seek summary judgment with respect to Plaintiffs' unfair competition claim as a matter of law. They erroneously point to the *Quality King* case once again to no avail. Evaluating Defendants' motion on its merits and drawing all reasonable inferences against them, this Court finds that there exist at least two genuine issues of material fact: the nature of Defendants' intent in purchasing Plaintiffs' Foreign Editions outside of the United States and reselling these editions to purchasers inside the United States via the Internet; and (2) the extent to which Defendants' aforementioned sales either misled or confused those purchasers regarding the origin or quality of those books. Accordingly, Defendants' motion for summary judgment on the common law "unfair competition" claim must be denied.

## V.   CONCLUSION

Summary judgment is GRANTED to Plaintiffs on the claim of copyright infringement. There is no genuine issue of material fact and the Plaintiffs are entitled to judgment as a matter of law. The Court awards statutory damages of $284,250, as set forth *supra*, and permanently enjoins Defendants from all future infringement of Plaintiffs' 379 copyrighted works at issue in this litigation.

Defendant Kumar's motion for lack of personal jurisdiction is DENIED. Defendants'

cross motions for failure to state a claim and/or summary judgment are also hereby DENIED.

Plaintiffs may elect between having judgment enter on their claims for copyright infringement in Claim One of the Amended Complaint and foregoing their trademark and common law claims in Claims Two and Three, or having judgment enter on the copyright claims and proceeding to trial on the trademark and common law claims.

If Plaintiffs elect the first option, the Court will enter a judgment for statutory damages and injunctive relief on the copyright claims which will stand as the final judgment on the entire case.

If Plaintiffs elect the second option, the Court will enter a final judgment for statutory damages and injunctive relief on the copyright claims pursuant to Rule 54(b), Fed. R. Civ. P., and the trademark and common law claims will proceed to trial.

Plaintiffs are directed to elect between those options and, on or before May 14, 2010, settle a Judgment consistent with this Opinion and reflective of that election on fourteen (14) days' notice.

It is So Ordered.

Dated:  New Haven, Connecticut
April __16, 2010

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE